*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| KENNETH ARNOULT, | ) | |
| | ) | Supreme Court No. S-17168 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-15-02606 CI |
| v. | ) | |
| | ) | O P I N I O N |
| MELISSA WEBSTER, DMD, | ) | |
| | ) | No. 7457 – June 12, 2020 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Douglas Blankenship, Judge.

Appearances: Ted Stepovich, Law Office of Ted Stepovich, Anchorage, for Appellant. John J. Tiemessen, Clapp, Peterson, Tiemessen, Thorsness & Johnson, LLC, Fairbanks, for Appellee.

Before: Bolger, Chief Justice, Stowers, Maassen, and Carney, Justices. [Winfree, Justice, not participating.]

STOWERS, Justice.

## I. INTRODUCTION

A man who suffers from periodontal disease received treatment from October 2011 through December 2012 and brought suit against his periodontist for dental malpractice in October 2015. The periodontist filed a motion for summary judgment based on the two-year statute of limitations. The man responded that the discovery rule applied and the statute of limitations did not start running until

October 2013, less than two years before he brought suit. The periodontist asserted that the man was on inquiry notice in January 2013, and therefore the statute of limitations expired months before he brought suit. The superior court granted the motion for summary judgment. Because the superior court correctly determined that the statute of limitations had expired, we affirm the superior court's order.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Dr. Melissa Webster first diagnosed Kenneth Arnoult with aggressive periodontal disease in October 2011.[1] She indicated that almost all of the bone loss he had sustained had already occurred and "not much more damage could occur in the future since the rate of bone loss had . . . decreased significantly by 2011." Dr. Webster explained that bone grafting was not necessary and instead recommended scaling and root planing along with antibiotics. Arnoult offered to have past X-rays sent to Dr. Webster, but she declined because she thought they were not necessary. She completed the scaling and root planing the following month.

Arnoult returned to Dr. Webster in January 2012, at which point she stated that her treatment was not as successful as she had expected. She recommended a new course of treatment: a hygienist would clean Arnoult's teeth every three months, and Dr. Webster would see him at every other cleaning to monitor progress. Arnoult asked if testing could identify whether a certain bacteria was causing his symptoms, but Dr. Webster said this was not possible. Arnoult again suggested that Dr. Webster look at his past X-rays dating back to 2005, but she again indicated this was not necessary.

---

[1]    In reviewing a grant of summary judgment, we view the facts in the light most favorable to the party against whom summary judgment was entered. *Brannon v. Cont'l Cas. Co.*, 137 P.3d 280, 284 (Alaska 2006). All facts in this section are thus presented as alleged by Arnoult.

Arnoult followed the new treatment plan. He returned to the office in February for a cleaning. In April his symptoms worsened. By May Arnoult had developed a horrible taste in his mouth; his gums began to bleed more while brushing and flossing; he found drinking room-temperature liquids painful; and he began to blend his meals and drink them through a straw. Arnoult also had his older X-rays sent to Dr. Webster around this time. Dr. Webster did not attend Arnoult's appointments in May, August, or December. By the end of 2012 Arnoult was suffering from extreme fatigue and weight loss. Having not heard back from Dr. Webster to reschedule, he made an appointment with a different periodontist in January 2013.

Arnoult visited his new periodontist, Dr. Jeffrey Rogers, on January 16, 2013. Dr. Rogers diagnosed Arnoult with a bacterial infection. Arnoult stated that Dr. Rogers "expressed a certain degree of surprise that the bacterial infection hadn't been treated sooner" and that "[Arnoult] had been seeing a periodontist but . . . there wasn't a set of X-rays that showed the area in question better." Arnoult stated that after taking the antibiotics, "the gum pain, the bleeding, the horrible taste, and the fatigue all subsided significantly." Dr. Rogers also suggested that Arnoult may have an underlying medical condition and sent a letter to Arnoult's doctor recommending that the doctor meet with Arnoult to try to determine the "underlying etiology behind the dramatic downturn in his oral health." Arnoult also visited his general dentist in February and another dentist in March or April.

Arnoult spent most of 2013 trying to find a medical cause for his problems because "the totality of the symptoms . . . combined with Dr. Webster's statements indicated that there was likely another cause other than periodontal disease." By visiting an endocrinologist, an internist who investigated possible gastroenterological causes, and an allergist, he "systematically eliminated all reasonably-possible medical causes as the culprit, and therefore determined that periodontal disease must have been the root cause."

He explained that he saw these other doctors "because the periodontal disease was allowed to . . . fester for such a long time and because the symptoms had become so systemic that medical professionals were starting to wonder if there was an underlying medical condition in order to explain the rapid bone loss."

In July Arnoult consulted an attorney to determine "where the threshold was for missed appointments and [dental] malpractice," as he wanted to understand "how many appointments . . . a doctor need[s] to miss for it to be considered [dental] malpractice." Prior to the meeting, he conducted some general Internet searches on the issue.

In August Arnoult requested that Dr. Webster send a copy of his records to his general practitioner. Arnoult reviewed the records at a doctor's appointment on October 30, at which point he "discovered information that caused him concern as to the accuracy of the records." He identified a number of specific problems, including missing records, modified records, and records that did not align with his recollections. He alleged it was at this point that he "understood he might have a likely claim against [Dr. Webster] for dental malpractice and he began to investigate."

In February 2014 Arnoult went to Dr. Webster's office and had the receptionist print the missing records for him. Arnoult repeatedly requested to speak with Dr. Webster about his records but each time was told she was unavailable. Arnoult filed a request for peer review with the Alaska Dental Society in March. He filed concurrent complaints with the Better Business Bureau and the Dental Licensing Board in July. By February 2015, these groups had completed their reviews and closed the complaints. Dr. Webster provided Arnoult with a second copy of his records in April 2015. A few days later he "discovered that the records had been altered and it appeared that the second set had been intentionally falsified." Arnoult stated that at this point he realized trusting the records was unreasonable.

### B. Proceedings

Arnoult, representing himself, filed a complaint in superior court against Dr. Webster on October 6, 2015. Dr. Webster filed a motion for judgment on the pleadings in March 2016 based on the statute of limitations. Arnoult, now represented by counsel, filed an amended complaint on July 5. The amended complaint included two counts. The first count alleged that (1) Dr. Webster was negligent in failing to properly assess, diagnose, and treat Arnoult's symptoms; (2) Dr. Webster failed to respond to Arnoult's inquiries about his treatment; and (3) Dr. Webster failed to give Arnoult accurate and complete information about his treatment. The second count alleged that Dr. Webster had falsified his dental records to protect herself from liability and therefore Arnoult was entitled to punitive damages. Dr. Webster answered the amended complaint and raised a number of affirmative defenses, including the statute of limitations. The court denied the motion for judgment on the pleadings.

The case then moved forward with discovery. Dr. Webster filed a motion for summary judgment based on the statute of limitations in July 2017. She argued that the two-year tort statute of limitations began to run in January 2013 because at that point Arnoult knew all the elements of his claim. She asserted that Arnoult did not receive any new information when reviewing his dental records in October 2013. She also argued it was irrelevant that Arnoult discovered that the records were altered in October 2013 because he did not assert that the alteration caused any harm, but instead claimed only that the alteration was grounds for punitive damages.

Arnoult filed his opposition. First, he argued that he did not know the cause of the bone loss until late 2013, and therefore "he did not know that [Dr. Webster] was providing false information and that he was subjected to negligent treatment." Second, he argued that he did not understand he had been negligently treated until he saw the records in October 2013, at which point "he eventually discovered that Dr. Webster had

-5- 7457

altered her records and had either misdiagnosed his condition or had made misrepresentations to him."

The court held oral argument on the motion for summary judgment. Arnoult's attorney summarized the claim for malpractice as "[f]ailure to diagnose that . . . at the time [Arnoult] was seeing [Dr. Webster], . . . he had aggressive periodontal disease, and that bone loss was occurring at a rapid rate at that time." In other words, "[t]he negligent conduct was failure to diagnose . . . severe rapid bone loss that was occurring during the time she was treating him. And to take action." With respect to inquiry notice, Arnoult's attorney argued that Arnoult did not know that "bone loss was occurring at the time [he] was seeing Dr. Webster . . . until . . . he saw [his dental] records in October [2013]," at which point "he started checking into this issue concerning the bone loss and how it had progressed." Further, he claimed that Arnoult was only on notice in October 2013 because "[t]hat's when he looked at the records, and the records did not comport with his recollection as to what happened in his appointments." Dr. Webster's attorney responded that Arnoult had spoken with his general dentist in February 2013 about the "aggressive nature of the bacteria and the significant bone loss that has occurred already" and that he therefore must have been on inquiry notice by that time.

The court granted the motion for summary judgment. It summarized all the facts Arnoult knew in July 2013 and found "[Dr.] Webster ha[d] established a prima facie case that Arnoult had sufficient information to prompt an inquiry no later than July [2013]." It found that "Arnoult had the same information available to him in July 2013 that he had when he reviewed [Dr.] Webster's chart notes in October of 2013 except that after his review of [Dr.] Webster's chart notes he concluded she altered the records" and thus concluded that Arnoult was on inquiry notice in July 2013. The court

also explained that because "the purpose of Count II was to allege a claim for punitive damages for the conduct alleged in Count [I]," the court dismissed Count II.

Arnoult filed a motion for reconsideration, arguing that the court did not "adequately consider[] the alterations made to [his] records by [Dr. Webster]," which were "pivotal because [they] served to mislead . . . Arnoult as to his cause of action,"[2] and that the court incorrectly misconstrued his second count as being dependent on the first count. The court denied the motion. It maintained its earlier position that Arnoult was on inquiry notice in July 2013. And it disagreed with Arnoult's claim that the second count stood on its own. It had earlier determined that "the purpose of Count II was to allege a claim for punitive damages for the conduct alleged in Count I." The court maintained that to the extent Count II concerned a cover-up of Arnoult's malpractice claim, "Count II is inextricably tied to Count I." The court allowed that Count II could stand alone as a claim for fraud but noted that Arnoult had provided no support for that contention, as there were "no facts supporting actual or justifiable reliance."[3] The court entered final judgment, and Arnoult appeals.

---

[2]     We note that Arnoult's argument that the alterations to his dental records misled him as to his cause of action is inconsistent with another argument in his brief — that the altered records actually alerted him to his cause of action.

[3]     *See Lightle v. State, Real Estate Comm'n*, 146 P.3d 980, 983 (Alaska 2006) (recognizing "justifiable reliance" as an element of fraud); *Anchorage Chrysler Ctr., Inc. v. DaimlerChrysler Corp.*, 129 P.3d 905, 915 (Alaska 2006) (recognizing "actual reliance and justifiable reliance" as "prerequisites to claims of negligent and intentional misrepresentation").

## III. STANDARD OF REVIEW

"We review a grant of summary judgment de novo."[4] "[O]ur duty is to determine whether there was a genuine issue of material fact and whether the moving party was entitled to judgment on the law applicable to the established facts."[5]

"Ordinarily, summary judgment is an inappropriate means of ascertaining when a statute of limitations commences."[6] This is because "[t]he date on which the statute of limitations begins to run is a factual question."[7] "Only in the unusual circumstance in which 'there exist uncontroverted facts that determine when a reasonable person should have been on inquiry notice' can a court properly resolve the question as a matter of law."[8] "[W]e must determine whether the superior court had before it uncontroverted facts sufficient to support its entry of summary judgment."[9]

---

[4] *Harrell v. Calvin*, 403 P.3d 1182, 1185 (Alaska 2017).

[5] *Palmer v. Borg-Warner Corp.*, 818 P.2d 632, 634 (Alaska 1990).

[6] *Harrell*, 403 P.3d at 1186 (quoting *Palmer*, 818 P.2d at 634).

[7] *John's Heating Serv. v. Lamb*, 46 P.3d 1024, 1031 (Alaska 2002) (citing *Gudenau & Co. v. Sweeney Ins., Inc.*, 736 P.2d 763, 767 (Alaska 1987)); *see also Jackson v. Municipality of Anchorage*, 375 P.3d 1166, 1170 n.12 (Alaska 2016) ("When [plaintiff] [is] on inquiry notice is a question of fact that 'depends upon all of the surrounding circumstances' and is reviewed for clear error." (alterations in original) (quoting *Gefre v. Davis Wright Tremaine, LLP*, 306 P.3d 1264, 1276 (Alaska 2013))).

[8] *John's Heating Serv.*, 46 P.3d at 1031 (quoting *Palmer*, 818 P.2d at 634); *see also Harrell*, 403 P.3d at 1186 ("Where, however, there exist uncontroverted facts that determine when a reasonable person should have been on inquiry notice 'we can resolve the question as a matter of law.'" (quoting *Palmer*, 818 P.2d at 634)); *Jackson*, 375 P.3d at 1170 ("[I]t is a legal question whether undisputed facts establish that a plaintiff is on inquiry notice." (alteration in original) (quoting *Christianson v. Conrad-Houston Ins.*, 318 P.3d 390, 396 (Alaska 2014))).

[9] *John's Heating Serv.*, 46 P.3d at 1031.

## IV.    DISCUSSION

An action in a personal injury case must be "commenced within two years of the accrual of the cause of action."[10]  Generally, the statute of limitations starts to run on the date of injury.[11]  However, if "an element of a cause of action is not immediately apparent, the discovery rule provides the test for the date on which the statute of limitations begins to run."[12]  The discovery rule provides that

> (1) a cause of action accrues when a person discovers, or reasonably should have discovered, the existence of all elements essential to the cause of action;
>
> (2) a person reasonably should know of his cause of action when he has sufficient information to prompt an inquiry into the cause of action, if all of the essential elements of the cause of action may reasonably be discovered within the statutory period at a point when a reasonable time remains within which to file suit[;]
>
> . . . .
>
> [(3)] where a person makes a reasonable inquiry which does not reveal the elements of the cause of action within the statutory period at a point where there remains a reasonable time within which to file suit, the limitations period is tolled until a reasonable person discovers actual knowledge of, or would again be prompted to inquire into, the cause of action.[13]

There are thus two possible accrual dates:  (1) "the date when [the] plaintiff should have

---

**10**      AS 09.10.070(a).

**11**      *Mine Safety Appliances Co. v. Stiles*, 756 P.2d 288, 291 (Alaska 1988) (citing *Russell v. Municipality of Anchorage*, 743 P.2d 372, 375 (Alaska 1987)).

**12**      *John's Heating Serv.*, 46 P.3d at 1031 (footnote omitted) (citing *Pedersen v. Zielski*, 822 P.2d 903, 906-07 (Alaska 1991)).

**13**      *Cameron v. State*, 822 P.2d 1362, 1366-67 (Alaska 1991).

discovered the existence of all essential elements of the cause of action" — the actual or constructive notice date — or (2) "the date when the plaintiff has information which is sufficient to alert a reasonable person to begin an inquiry to protect his rights" — the inquiry notice date.[14] But our decisions have emphasized that "the inquiry notice date, rather than the date when the inquiry should have produced knowledge of the elements of the cause of action," is the operative date for purposes of determining when the statute of limitations begins to run.[15] Additionally, if the plaintiff makes a reasonable inquiry but does not discover all elements of the claim in a time reasonably sufficient to file his lawsuit within the statutory period, then the statute of limitations is tolled until there is actual notice or new evidence prompting a new inquiry.[16] A plaintiff "has an affirmative duty to investigate *all* potential causes of action before the statute of limitations expires."[17]

Arnoult was on inquiry notice of a malpractice claim well before October 2013.[18] He knew in December 2012 that Dr. Webster had failed to attend or

---

[14]     *John's Heating Serv.*, 46 P.3d at 1031 (alteration in original) (quoting *Cameron*, 822 P.2d at 1366).

[15]     *Cameron*, 822 P.2d at 1366.

[16]     *John's Heating Serv.*, 46 P.3d at 1031-32 (citing *Cameron*, 822 P.2d at 1367).

[17]     *Palmer v. Borg-Warner Corp.*, 818 P.2d 632, 634 (Alaska 1990) (emphasis in original).

[18]     In his amended complaint, Arnoult indicated that the facts alleged in Count II — that Dr. Webster had "intentionally altered and falsified [his] medical/dental records" — were a basis for punitive damages for the malpractice claim alleged in Count I. Count II was *not* asserted as an independent claim. And Arnoult did not explain how Count II is an independent claim in his motion to reconsider before the superior court or his brief on appeal to this court. We therefore decline to address

(continued...)

-10-                                                                                         7457

reschedule his appointments. Arnoult states that he knew in January 2013 that Dr. Rogers was surprised that Arnoult's bacterial infection had not been treated sooner and that there were no recent X-rays. In the early months of 2013 Arnoult knew that his symptoms improved soon after being treated by Dr. Rogers. All of these facts would have put a reasonable person on inquiry notice of a potential dental malpractice claim.[19]

Once Arnoult was on inquiry notice in early 2013, he had a "duty to investigate *all* potential causes of action before the statute of limitations expire[d]."[20] This would include a claim for malpractice based on misdiagnosis or misinformation. And Arnoult did investigate such claims before the statute of limitations expired — he knew of the alleged misdiagnosis and misinformation by October 2013, giving him over a year to file within the statute of limitations.[21] We therefore hold that "the superior court had before it uncontroverted facts sufficient to support its entry of summary judgment" based on its conclusion that the limitation period started no later than July 2013.[22]

## V. CONCLUSION

We AFFIRM the superior court's order granting summary judgment.

---

[18] (...continued)
Count II as an independent fraud claim. Because Arnoult pleaded Count II as dependent on Count I — the dental malpractice claim — the statute of limitations for Count II started to run when Arnoult was on inquiry notice for the malpractice claim, not when he had notice of the falsification of records.

[19] *See John's Heating Serv.*, 46 P.3d at 1031.

[20] *See Palmer*, 818 P.2d at 634 (emphasis in original).

[21] *See Cameron*, 822 P.2d at 1367-68 (holding that "ten months was a reasonable time . . . to investigate and file [a] claim").

[22] *See John's Heating Serv.*, 46 P.3d at 1031.