NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| ANNE P. MULLIGAN, | ) |
| | ) Supreme Court No. S-17901 |
| Appellant, | ) |
| | ) Superior Court No. 3AN-19-07537 CI |
| v. | ) |
| | ) MEMORANDUM OPINION |
| DR. JOHNNA KOHL, | )     AND JUDGMENT* |
| | ) |
| Appellee. | ) No. 1874 – February 2, 2022 |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Jennifer Henderson, Judge.

Appearances: Anne P. Mulligan, pro se, Anchorage, Appellant. Gregory R. Henrikson, Walker & Eakes, Anchorage, for Appellee.

Before: Winfree, Chief Justice, Maassen and Borghesan, Justices. [Carney, Justice, not participating.]

## I.    INTRODUCTION

A doctor asked the police to take her patient to the hospital for overnight observation because of the patient's erratic and irrational behavior during a medical appointment. Over two years later the patient filed a one-sentence complaint alleging that the doctor had committed Medicaid fraud. The doctor moved for summary judgment and requested a pre-litigation screening order against the patient, who had sued her unsuccessfully twice before. The patient moved to amend her complaint to allege a

---

*        Entered under Alaska Appellate Rule 214.

variety of fraud claims and personal injury torts, including violations of the right to privacy and the Health Insurance Portability and Accountability Act (HIPAA).

The superior court granted the doctor's summary judgment motion, denied the patient's motion to amend her complaint on grounds that any amendment would be futile, and issued the requested pre-litigation screening order. The patient appeals. Because the superior court properly decided that her Medicaid fraud claim and her proposed additional claims all lacked a legal or factual basis, or both, we affirm its judgment.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

In November 2016 Anne Mulligan went to an appointment with Dr. Johnna Kohl complaining of a cough. During the appointment Mulligan was allegedly irrational and "not interactive"; according to the doctor's notes Mulligan was "not able to answer any open[-]ended questions" and admitted she was "having trouble thinking." Dr. Kohl diagnosed her with bipolar disorder and concluded that she was suffering a "mixed, severe" episode "with psychotic features."

Dr. Kohl did not believe Mulligan "was able to go home in her current state," so after first unsuccessfully seeking help from Mulligan's son she asked the police to take Mulligan to Providence Alaska Medical Center's psychiatric emergency room for further assessment. According to Dr. Kohl's notes, Mulligan agreed to go with the police once they arrived. A Providence doctor diagnosed Mulligan with insomnia, bronchitis, and a "depressed, severe" episode of bipolar disorder "with psychotic features."

### B.    Prior Proceedings

Mulligan subsequently filed three separate civil actions against Dr. Kohl. She filed her first complaint in September 2017, alleging that Dr. Kohl was in

relationships with both Mulligan's ex-coworker and Mulligan's ex-boyfriend and was sharing her "personal medical information" with them. She also claimed that Dr. Kohl had falsified Mulligan's Family and Medical Leave Act (FMLA) paperwork in order to prevent Mulligan from working in 2016. And she claimed that Dr. Kohl had caused her to be "illegally" removed from the doctor's office by the police. The lawsuit was dismissed in early 2018 for lack of service.

Mulligan filed her second complaint against Dr. Kohl in October 2018. She claimed that the doctor had paid police officers and hospital staff — who she claimed were "members of the KKK" — to assassinate her at a grocery store in April 2017. The court granted summary judgment to Dr. Kohl and dismissed the case.

## C. Current Proceedings

Mulligan commenced this third action in May 2019 by filing a one-sentence complaint: "Dr. [Johnna] Kohl committed Medicaid fraud on 5/31/2017." Dr. Kohl moved for summary judgment and asked for a pre-litigation screening order that would place restraints on Mulligan's ability to file frivolous lawsuits against her.

Mulligan responded with a number of new allegations, including private insurance fraud, tax fraud involving false charity care applications,[1] and privacy and HIPAA violations. She asked for an audit of Dr. Kohl's patient records "for the past 17 years," the suspension of the doctor's professional licenses, and $100,000,000.00 in damages. The court ordered Mulligan to move to amend her complaint to the extent she was seeking to assert new claims. In an amended complaint Mulligan repeated her allegations and also accused Dr. Kohl of lying in her FMLA paperwork. In later filings

---

[1] "Charity care is free or discounted medically necessary health care that many hospitals offer to people who cannot afford to pay for treatment otherwise." Karen Axelton, *What Is Charity Care in Health Care?*, EXPERIAN (Dec. 15, 2020), experian.com/blogs/ask-experian/what-is-charity-care-in-health-care/.

she added still more allegations, including that Dr. Kohl refused to report Mulligan's claim of workplace abuse, "committ[ed] medical malpractice," and "abused" Alaska's mental health statutes.

The court held oral argument on the pending motions. Mulligan repeated her allegations and described her proposed amendments as alleging "elder abuse and . . . elder fraud." The court granted summary judgment on the initial one-sentence complaint, reasoning that Mulligan was "not able to bring a private cause of action for Medicaid fraud." Considering "the viability or lack thereof" of the claims Mulligan was attempting to add by amendment, the court denied the motion to amend on futility grounds because all the proposed claims were barred by the statute of limitations or lacked any factual or legal basis. The court also granted a pre-litigation screening order barring Mulligan from filing further lawsuits against Dr. Kohl without the superior court's permission, to be granted only if Mulligan established "by admissible evidence, that: The [new] complaint does not restate a prior cause of action that has already been asserted or could have been asserted; [and t]he [new] complaint is definitive, detailed and legally sufficient to survive a motion to dismiss."[2]

Mulligan moved for reconsideration, which the court denied. Mulligan appeals.

## III.   STANDARD OF REVIEW

"We review a grant of summary judgment de novo, affirming if the record presents no genuine issue of material fact and if the movant is entitled to judgment as a

---

[2]     Mulligan does not address the pre-litigation screening order on this appeal except for one conclusory sentence in her reply brief. "[I]ssues not argued in opening appellate briefs are waived. This rule applies equally to pro se litigants." *Hymes v. DeRamus*, 222 P.3d 874, 887 (Alaska 2010) (footnote omitted). We therefore do not address the screening order.

matter of law."[3]  "We review a superior court's denial of a motion to amend a complaint for abuse of discretion."[4]  "It is within a trial court's discretion to deny such a motion where amendment would be futile because it 'advances a claim or defense that is legally insufficient on its face.' "[5]  "We use our independent judgment to review a conclusion that an amendment meets that description."[6]

## IV.    DISCUSSION

### The Court Did Not Err In Granting Summary Judgment To Dr. Kohl Or Abuse Its Discretion In Denying The Motion To Amend.

Mulligan's brief on appeal repeats her factual allegations about Dr. Kohl's conduct, but she makes virtually no legal argument about the basis of the superior court's dispositive decisions.  In light of the leniency we afford pro se litigants,[7] we consider the sufficiency of her allegations despite her lack of cogent argument.  We conclude that all her claims lack adequate legal support, factual support, or both.

The basis of the "Medicaid fraud" alleged in Mulligan's complaint appears to be that Dr. Kohl billed Medicaid for the services she provided Mulligan, without Mulligan's knowledge, despite a notice on her practice group's website that she did not

---

[3]    *Bohn v. Providence Health Servs. – Wash.*, 484 P.3d 584, 593 (Alaska 2021) (quoting *Hagen v. Strobel*, 353 P.3d 799, 802 (Alaska 2015)).

[4]    *Krause v. Matanuska-Susitna Borough*, 229 P.3d 168, 174 (Alaska 2010).

[5]    *Id.* (quoting *Hallam v. Alaska Airlines, Inc.*, 91 P.3d 279, 287 (Alaska 2004)).

[6]    *Id.* at 174-75.

[7]    *See Leahy v. Conant*, 447 P.3d 737, 742-43 (Alaska 2019) (explaining that we "hold self-represented litigants to a 'less stringent' standard than lawyers; so long as the essence of the self-represented litigant's argument can be easily discerned from the briefing, and the opposing party would not be prejudiced by its consideration, it should be considered" (quoting *Adkins v. Stansel*, 204 P.3d 1031, 1033 (Alaska 2009))).

accept Medicaid. Mulligan does not indicate how she could have been harmed by this. In any event, "[t]he pertinent federal and state [Medicaid] statutory provisions do not explicitly create private rights of action."[8] Dr. Kohl was plainly entitled to summary judgment on the only claim alleged in Mulligan's complaint.

We turn now to the claims that Mulligan sought to add by amendment. "It is well established that leave to amend should be 'liberally granted.' "[9] But denying leave to amend is justified if the proposed claims are "legally insufficient" on their face or if amendment would otherwise be futile.[10]

Mulligan argues that Dr. Kohl "committed medical malpractice" and "abused Alaska Statute Title 47" in November 2016 when she "illegally had [Mulligan] hospitalized for a 24 hour observation." But Mulligan does not specify how Dr. Kohl committed malpractice, nor does she allege facts that show a breach of any duty even after we make the required "reasonable inferences from the evidence in [her] favor."[11] Furthermore, claims like these arising out of the November 2016 appointment are barred by the two-year statute of limitations.[12] Because the claim is both legally and factually

---

[8]     *Smallwood v. Cent. Peninsula Gen. Hosp.*, 151 P.3d 319, 324 (Alaska 2006).

[9]     *Ebli v. State, Dep't of Corr.*, 451 P.3d 382, 390 (Alaska 2019) (quoting *Miller v. Safeway, Inc.*, 102 P.3d 282, 293 (Alaska 2004)).

[10]     *Id.* at 387 (quoting *Krause*, 29 P.3d at 174).

[11]     *Christensen v. Alaska Sales & Serv., Inc.*, 335 P.3d 514, 520 (Alaska 2014).

[12]     *Pedersen v. Flannery*, 863 P.2d 856, 858 (Alaska 1993) (holding that two-year statute of limitations applies to actions for medical malpractice asserting non-economic injuries); *see also Arnoult v. Webster*, 480 P.3d 592, 597 (Alaska 2020) (applying two-year statute of limitations to action for dental malpractice). Mulligan does not argue that the statute of limitations may have been tolled. *See id.* (describing

(continued...)

infirm, adding it to Mulligan's complaint by amendment would have been futile.

Mulligan also alleges that Dr. Kohl defrauded Mulligan's private insurer and the Internal Revenue Service. She argues that Dr. Kohl "illegally" billed her private insurance after it was cancelled, overbilled the insurer, and made false claims for charity care that allowed her to reduce her tax bill. But even if we assume the truth of these allegations for summary judgment purposes,[13] Mulligan does not suggest how she was damaged or why any resulting cause of action would belong to her rather than her insurer or the IRS.[14]

Mulligan's allegation of fraud involving her FMLA paperwork is vague, but she appears to assert that Dr. Kohl did not correctly date it. Like the trial court we are unable to discern a legal argument underlying this factual allegation,[15] and adding it

---

[12]      (...continued)
situations in which limitations period may be tolled because of plaintiff's failure to discover all elements of her claim despite reasonable inquiry).

[13]      *See Beistline v. Footit*, 485 P.3d 39, 42 (Alaska 2021) (explaining that in determining whether genuine issue of material fact precludes summary judgment, we must draw all factual inferences, and view all evidence in light most favorable to, non-moving party).

[14]      With some statutory exceptions, there is no private right of action to enforce the Internal Revenue Code. *See, e.g.*, *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (stating that "private rights of action to enforce federal law must be created by Congress"); *cf. Burton v. William Beaumont Hosp.*, 347 F. Supp. 2d 486, 493 (E.D. Mich. 2004) (noting that "Congress has established private rights of action in the Internal Revenue Code for [some] tax-related matters," citing provisions allowing civil damages for unauthorized disclosure of tax information by federal employee).

[15]      *See Wright v. Anding*, 390 P.3d 1162, 1169 (Alaska 2017) ("[T]o avoid waiver, a pro se litigant's briefing must allow his or her opponent and this court to discern the pro se's legal argument. Even a pro se litigant . . . must cite authority and provide a legal theory." (alterations in original) (quoting *Casciola v. F.S. Air Serv., Inc.*,

(continued...)

to her complaint would have been futile.

Mulligan also alleges that Dr. Kohl violated her privacy rights and HIPAA, specifically that the doctor "spoke with" Mulligan's uncle about her and contacted Providence about the transfer to its emergency room "without [a release of information] on file." Mulligan does not state what was improper about any disclosures that took place, and no evidence — including Dr. Kohl's records for those dates — suggests any impropriety. In any event, "[HIPAA] regulations do not confer a private right of action on an individual."[16] To the extent Mulligan intended to assert a constitutional privacy claim, "the constitutional right to privacy is a right against government action, not against the actions of private parties."[17] Furthermore, the alleged wrongdoing again relates to the November 2016 office visit — two and a half years before Mulligan filed her complaint and three years before she moved to amend — and the claim is barred by the statute of limitations. Any one of these reasons justifies the superior court's denial of the amendment on futility grounds.

Finally, Mulligan repeats her argument that she told Dr. Kohl about a harassment incident at work and Dr. Kohl failed to report it to Mulligan's employer. But assuming there was a mandatory reporting duty under the alleged circumstances,[18] and

---

[15]   (...continued)
120 P.3d 1059, 1063 (Alaska 2005))).

[16]   *Id.* at 1168 n.12.

[17]   *Chizmar v. Mackie*, 896 P.2d 196, 206 (Alaska 1995).

[18]   *See* AS 47.24.010 (mandating reporting for certain professions, including physicians, if there is reasonable cause to believe a vulnerable adult "suffers from undue influence, abandonment, exploitation, abuse, neglect, or self-neglect"). Mulligan asserted several times in the superior court that she was a victim of sexual harassment; the only further description in the record is from a police report relaying her statement
(continued...)

assuming that a breach of the duty gave rise to a private cause of action,[19] Mulligan's allegations again relate to the November 2016 office visit. A breach-of-duty claim accruing at that time is barred by the two-year statute of limitations.[20] The court acted well within its discretion by denying Mulligan's motion to add these futile claims to her complaint.

## V. CONCLUSION

The superior court's judgment is AFFIRMED.

---

[18] (...continued) that the ex-coworker "approached and touched her hair and shoulder" while she was sitting in a restaurant.

[19] Other jurisdictions differ over whether their mandatory reporting statutes create an implied private cause of action. *Compare Arbaugh v. Bd. of Educ., Cnty. of Pendleton*, 591 S.E.2d 235 (W. Va. 2003) *and Doe v. Marion*, 605 S.E.2d 556 (S.C. 2004) (holding no private cause of action), *with Beggs v. State, Dep't of Soc. & Health Servs.*, 247 P.3d 421 (Wash. 2011) (recognizing private cause of action).

[20] *See* AS 09.10.070(a) (providing that two-year statute of limitations applies to action "for personal injury or death, or injury to the rights of another not arising on contract and not specifically provided otherwise," and to "a liability created by statute, other than a penalty or forfeiture").