*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| SWALLING CONSTRUCTION COMPANY, INC., | Supreme Court Nos. S-18523/18543/ 18574 |
| Appellant and Cross-Appellee, | Superior Court No. 3AN-19-10857 CI |
| v. | O P I N I O N |
| ALASKA USA INSURANCE BROKERS, LLC, | No. 7730 – November 8, 2024 |
| Appellee and Cross-Appellant, | |
| and | |
| ATLANTIC SPECIALTY INSURANCE COMPANY, d/b/a International Marine Underwriters, | |
| Appellee and Cross-Appellant. | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Josie Garton, Judge.

Appearances: William F. Brattain II, Baker Brattain, LLC, Anchorage, for Appellant and Cross-Appellee Swalling Construction Company, Inc. Kenneth M. Gutsch, Richmond & Quinn, Anchorage, for Appellee and Cross-Appellant Alaska USA Insurance Brokers, LLC. Laura L. Farley, Farley & Graves, P.C., Anchorage, for Appellee and Cross-Appellant Atlantic Specialty Insurance Company.

Before:  Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

CARNEY, Justice.

## I.    INTRODUCTION

A construction company chartered a barge and obtained insurance on the barge through an insurance broker.  When the barge was returned at the end of the charter, the barge's owner had it inspected.  The inspection revealed it had been damaged.  The barge owner sued the construction company in federal court.  The construction company asked its insurer to defend it in the lawsuit, but the insurer refused to defend the construction company on the ground that its policy did not cover the damage.  After the federal court awarded damages to the barge owner, the construction company sued its insurer and the broker in state court.

The construction company moved for summary judgment against the broker and the insurer; the superior court denied the motion.  The broker and insurer also moved for summary judgment, arguing that the construction company's claims were barred by the statute of limitations; the court agreed that all of the claims against the broker and most of the claims against the insurer were barred by the statute.  After an evidentiary hearing on the remaining claims against the broker, the court ruled that those claims, too, were barred.

The construction company appeals; the insurance company and broker cross-appeal, arguing that the superior court erred when it denied summary judgment on all claims based on the statute of limitations.  We affirm the superior court's summary judgment order in favor of the broker and the insurer, although we affirm on grounds other than those relied upon by the superior court.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

In 2014 Swalling Construction Company, Inc. entered into a charter agreement with Pool Engineering, Inc. for a freight barge. The agreement specified the insurance coverage Swalling was required to obtain for the barge. Swalling turned to its insurance broker, Alaska USA Insurance Brokers, to obtain the insurance. Alaska USA obtained insurance from Atlantic Specialty Insurance Company, and Swalling agreed to a policy with Atlantic.

After the charter ended and Swalling returned the barge, Pool had the barge inspected. The inspection revealed damage to the barge's hull. Pool notified Swalling of the damage in August 2014, and Swalling notified Alaska USA the next day. Alaska USA in turn notified Atlantic in February 2015. Atlantic denied coverage in August 2015. In an August 2015 letter, Atlantic stated the insurance policy it issued covered only "insured peril[s]," and that there was no evidence that an "insured peril" damaged the barge's hull. Atlantic also indicated that it received late notice of the claim.

In January 2016 Pool sued Swalling in federal court for breach of the charter contract and sought damages. Atlantic declined Swalling's request to defend it in a February 2016 letter. Atlantic's letter reiterated that the damage itself was not covered under the insurance policy it issued to Swalling. It also explained that the policy provided coverage for liabilities arising from specified "risks, events, and happenings," but not "[l]iabilities arising from a charter party dispute over alleged damages to an insured vessel." Swalling's attorney wrote to Atlantic in April requesting it reconsider its decisions that the damage was not covered and that it had no duty to defend Swalling in the lawsuit; Atlantic again declined coverage in June 2016. Shortly thereafter Swalling sent an email to Alaska USA, asking that it be it an "ally, not a bystander" in the dispute over whether the policy covered the barge damage.

After Swalling contacted it for assistance, Alaska USA commissioned Partners Claim Services, a third-party advisor to insurers and insurance brokers, to prepare a report providing its opinion whether Atlantic properly declined coverage of Swalling's claim. Partners's report suggested that the damage should be covered by Swalling's insurance policy because it was caused by a peril "of the Sea," and that Atlantic had a duty to defend Swalling in the lawsuit. The report was sent to Atlantic, and Atlantic responded by letter in August 2016. Atlantic restated its prior conclusion that the damage was not covered because Swalling had not shown it was caused by a specific named peril, and that it had no duty to defend Swalling in a breach of contract action.

Partners revised its report in response to Atlantic's letter. This second report again suggested that the insurance policy covered the damage to the barge, but changed its opinion that Atlantic had a duty to defend Swalling — agreeing instead with Atlantic that there was no defense coverage because Pool's lawsuit sounded in contract. Atlantic apparently maintained its position that the damage was not covered and it had no duty to defend Swalling in Pool's lawsuit.

Pool and Swalling engaged in extensive motion practice, and ultimately stipulated to a final judgment of $300,000, which was entered in July 2019.

### B. Proceedings

On November 1, 2019, several months after the federal litigation concluded, Swalling sued Alaska USA and Atlantic in state court. Swalling alleged breach of contract by Atlantic, and insurance bad faith and negligence by both Alaska USA and Atlantic. Each party moved for summary judgment in August 2021. Alaska USA and Atlantic asserted that Swalling's lawsuit was barred by the applicable statute of limitations. Swalling meanwhile argued that it was entitled to summary judgment on its claims because the underlying factual circumstances compelled that result.

The superior court denied summary judgment on Swalling's claims against Alaska USA. The court agreed that Swalling's "duty to inquire" into Alaska

USA's alleged failures was triggered in June 2016, when Atlantic declined to defend Swalling based on the provisions in its policy. It reasoned that Alaska's "discovery rule" can toll an applicable statute of limitations, delaying the start of the clock until the claimant discovers, or reasonably should discover, that the elements of a cause of action exist. The court determined that Atlantic's June 2016 denial letter identified "specific policy provisions," and should have placed Swalling on notice "of the possibility that [Alaska USA] had failed to acquire adequate coverage."

But the court found that a question of fact remained as to whether Alaska USA made reassurances to Swalling that could have delayed Swalling's duty to inquire. It noted that Swalling's president had stated he "had lots of conversations regarding [coverage] over the term of this dispute" with an Alaska USA account manager and that he believed that this manager understood the barge damage to be covered. Swalling also pointed to the account manager's deposition testimony that Alaska USA had contracted with Partners to "evaluate Atlantic's position and 'help get this coverage taken care of or get the claim paid for Swalling.' " The court scheduled an evidentiary hearing to resolve this factual dispute.

After the evidentiary hearing, the court found that while Alaska USA did take actions to reassure Swalling, "there is no evidence in the record suggesting that these assurances in fact caused any delay in filing suit." It therefore concluded that the statute of limitations on Swalling's claims against Alaska USA had run and granted summary judgment to Alaska USA. Swalling moved for reconsideration, arguing the court had erred in its determination that Swalling's claims against Alaska USA were time barred. The superior court denied the motion and entered final judgment in favor of Alaska USA.

Meanwhile the court also determined that the statute of limitations had run on Swalling's claims against Atlantic and that Atlantic had no duty to defend or indemnify Swalling. It granted summary judgment to Atlantic. The court found that the policy language did not give rise to a duty to defend or indemnify Swalling for its

defense costs in the Pool lawsuit in federal court. And it concluded that Swalling's claim against Atlantic accrued in August 2015, when it declined coverage of the barge damage.

Swalling moved for reconsideration, arguing that because its policy with Atlantic was a "pure indemnity" policy, its claim against Atlantic had not accrued until final judgment was entered in the Pool lawsuit. Swalling also maintained that, in any event, Atlantic owed a duty to defend or indemnify it with respect to the Pool lawsuit. The superior court granted reconsideration in part. It agreed with Swalling that its claim against Atlantic had not accrued until final judgment was entered in federal court, reasoning that before judgment was entered, "there was no demand capable of enforcement and no cause of action." It therefore held Swalling's claim against Atlantic was timely. But the court upheld its prior conclusion that Atlantic owed no duty to defend or indemnify Swalling in the Pool lawsuit.

The superior court granted summary judgment to Atlantic on Swalling's claims against it, concluding that Swalling had not demonstrated the damage to the barge was caused by a covered peril. Therefore, it reasoned, Atlantic was not liable as a matter of law for the contract and tort claims Swalling brought against it, even though Swalling's claims were timely. The court entered final judgment in favor of Atlantic.

Swalling appeals from the superior court's grants of summary judgment to Alaska USA and Atlantic. Atlantic and Alaska USA cross-appeal the superior court's determination on reconsideration that Swalling's claims against Atlantic were timely.[1]

---

[1]     We note that this cross-appeal appears unnecessary, because Atlantic and Alaska USA's argument in favor of summary judgment on limitations grounds is merely an alternative basis for affirming the superior court's judgment in Atlantic's favor. *See Nicolos v. North Slope Borough*, 424 P.3d 318, 325 (Alaska 2018) (" '[A]n appellee may urge . . . in defense of a decree or judgment any matter appearing in the record . . . .' It is only when an appellee 'attack[s] [a] decree [or judgment] with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary' that the appellee must file a cross-appeal.").

## III.  STANDARD OF REVIEW

We review rulings on motions for summary judgment de novo, "adopting the rule of law that is most persuasive in light of precedent, reason, and policy."[2]  A superior court's "determination regarding the applicable statute of limitations is a question of law that we review de novo."[3]  But the time at which a cause of action accrues is a factual finding reviewed for clear error.[4]  A factual finding is clearly erroneous when we are "left with a definite and firm conviction on the entire record that a mistake has been made."[5]

## IV.  DISCUSSION

### A.  Swalling's Claims Against Alaska USA Are Time-Barred.

Swalling argues that the superior court erred when it granted summary judgment in favor of Alaska USA.  Swalling contends that the fact it "did not receive insurance coverage that covered exactly the type of potential liability it needed to be covered . . . [is] sufficient to provide the evidentiary circumstances necessary to find that a breach . . . occurred."  The superior court found that Swalling's claims were time-barred.  We agree and affirm the judgment of the superior court.

Alaska Statutes 09.10.070 and 09.10.053 provide for two- and three-year limitations periods for actions alleging negligence and breach of contract, respectively.  The statute of limitations generally begins to run on the date a claimant suffers harm.[6]  But if "an element of a cause of action is not immediately apparent, the discovery rule

---

**2**　　*State Farm Mut. Auto. Ins. Co. v. Houle*, 269 P.3d 654, 657 (Alaska 2011) (quoting *State Farm Mut. Auto. Ins. Co. v. Dowdy*, 129 P.3d 994, 998 (Alaska 2008)).

**3**　　*Sengupta v. Wickwire*, 124 P.3d 748, 752 (Alaska 2005) (citing *Alderman v. Iditarod Prop. Inc.*, 104 P.3d 136, 140 (Alaska 2004)).

**4**　　*Id.* (citing *Alderman*, 104 P.3d at 140).

**5**　　*Riddle v. Lanser*, 421 P.3d 35, 44 (Alaska 2019) (quoting *Fernandes v. Portwine*, 56 P.3d 1, 4 (Alaska 2002)).

**6**　　*See Arnoult v. Webster*, 480 P.3d 592, 597 (Alaska 2020).

provides the test for the date on which the statute of limitations begins to run."[7]  And when an element of a particular cause of action is not immediately apparent, our decisions have emphasized that the inquiry notice date — "the date when the plaintiff has information which is sufficient to alert a reasonable person to begin an inquiry to protect his rights" — is the applicable date for the purpose of determining when the statute of limitations begins to run.[8]

### 1.     The superior court correctly applied *Christianson*.

In concluding that Swalling's claims were time-barred, the superior court looked to *Christianson v. Conrad-Houston Insurance*.[9]  In *Christianson* we affirmed a finding that the denial of coverage by an insurance company provided inquiry notice to the customer that the broker may not have satisfied its obligations to the customer.[10]

Here the court focused on a June 2016 letter in which Atlantic declined to defend Swalling on the basis of specific policy provisions.  That letter explained that Swalling's policy did not "contain a duty to defend the assured against potential contractual liabilities arising from the charter."  The court reasoned that this information was "sufficient to put a reasonable party on notice of the need to 'begin an inquiry to protect its rights,' " citing *Christianson*.[11]  The court concluded that the statute of limitations began to run when Swalling received the June 2016 letter because Swalling had been placed on inquiry notice that Alaska USA might not have satisfied its obligations as its insurance broker.

---

[7]     *Id.* (quoting *John's Heating Serv. v. Lamb*, 46 P.3d 1024, 1031 (Alaska 2002)).

[8]     *Id.*

[9]     318 P.3d 390 (Alaska 2014).

[10]     *Id.* at 401-02.

[11]     *Id.* at 398.

Swalling argues that *Christianson* is inapt because it dealt with a policy in which there was an obligation to defend — since this case is about an indemnity policy lacking such an obligation, Swalling reasons that it was not placed on notice until much later. Alaska USA counters that the court correctly applied *Christianson*, because that case is about the general duty to inquire. Swalling also argues that we should instead rely on *Jones v. Westbrook*.[12] But we distinguished *Jones* from *Christianson* on the basis that the insured party in *Jones* had not yet suffered an appreciable injury.[13] Swalling suffered the exact same injury here as in *Christianson* — incurred defense costs.[14] And in *Christianson* we emphasized that "the theoretical possibility [Christianson's] out-of-pocket defense expenses might be reimbursed in the future [did not] obviate the fact Christianson was then suffering an actual injury that triggered the duty of inquiry as a matter of law."[15]

We agree with Alaska USA that *Christianson* governs this case because *Christianson* was about the general duty to inquire.[16] Indeed the facts of that case actually led us to disclaim any distinction between the duties to defend and indemnify.[17] But even if that distinction matters here, Swalling's argument addresses only one of the two coverage gaps it alleges exist in its policy — coverage of defense costs — and not the issue of whether the damage was covered by the policy in the first place.

---

[12]   379 P.3d 963 (Alaska 2016).

[13]   *See id.* at 968-69.

[14]   *See Christianson*, 318 P.3d at 399-400.

[15]   *Id.* at 400.

[16]   *Id.* at 396 (describing "ultimate issue" as whether insurer's "initial letter put [insured] on inquiry notice and that the statute of limitations [on that claim] therefore began to run when [insurer] sent him that letter").

[17]   *Id.* at 402 n.43 (referring to distinction between duty to defend and duty to indemnify as "immaterial dispute" in light of overall findings).

The superior court properly relied upon *Christianson* to conclude the statute of limitations on Swalling's claims began to run when it was placed on inquiry notice by Atlantic's June 2016 letter.[18]

### 2. The superior court did not clearly err by finding Swalling had not relied on assurances from Alaska USA to delay filing.

The superior court held an evidentiary hearing to determine whether Alaska USA "had made assurances that it had procured adequate coverage, giving rise to factual questions whether [Swalling] had reasonably relied on such assurances." The court heard testimony from Swalling's president and the broker who worked with Swalling at Alaska USA. After the hearing, the superior court found that there was no evidence suggesting "these assurances in fact caused any delay in filing suit."

The record supports the court's conclusion that Swalling failed to show it actually relied on assurances from Alaska USA. Swalling's president conceded that the Alaska USA account manager never advised him that his company had coverage for the damage or defense costs. He also testified that the company did not bring suit against Atlantic because the company "expected to prevail at trial." The superior court concluded that the evidence, including the president's testimony, was "consistent with [Swalling's] position . . . that [Swalling] waited to file suit until after the conclusion of the Pool litigation and the Partners . . . reports [from Alaska USA] had nothing to do with it." The remainder of the record contains a dearth of evidence that Swalling actually relied on any representation by Alaska USA that the damage to the barge or its legal expenses would be covered. The superior court's conclusion that Alaska USA did not in fact cause a delay in filing suit was not clearly erroneous.

Swalling finally argues that Alaska USA's delay in reporting the claim to Atlantic deprived it of a "second-look" opportunity to resolve its factual disputes with Atlantic. This argument is unpersuasive. Atlantic initially denied coverage on grounds

---

[18] *See id.* at 401-02.

unrelated to any delay in August 2015.  And Atlantic informed Swalling in February 2015 that it had not received the claim from Alaska USA until that same month, thereby making Swalling aware of any potential negligence by Alaska USA.  We are unconvinced by Swalling's argument that Alaska USA's delay in informing Atlantic somehow paused the statute of limitations on its claims against Alaska USA.

Because the statute of limitations had run on Swalling's claims against Alaska USA by the time it filed suit, we affirm the trial court's grant of summary judgment in favor of Alaska USA.[19]

**B.      Swalling's Claims Against Atlantic Are Time-Barred.**

Although it prevailed on the merits, Atlantic argues in its cross-appeal that the superior court erred by ruling that Swalling's claims against it were not time-barred. In its order on Swalling's motion for reconsideration, the court wrote that Atlantic issued Swalling a "pure indemnity policy" and that "[t]he statute of limitations on a pure indemnity claim does not begin to run until after an indemnifiable loss has occurred."  It concluded that Swalling's claim did not accrue until "the [federal] district court entered judgment against Swalling in the Pool litigation and Atlantic refused to pay."  Swalling responds that its claims were timely and meritorious.  But because we conclude that Atlantic was entitled to summary judgment on the statute of limitations, it is unnecessary for us to reach the merits of Swalling's coverage arguments.

Atlantic asserts that the superior court overlooked the distinction between first- and third-party claims.  A first-party claim is one brought by an insured on its own actual losses and expenses; a third-party claim is one brought to protect the insured from

---

[19]      Because we affirm the superior court's grant of summary judgment to Alaska USA, we do not address its argument relating to Swalling's waiver of attorney-client privilege in the superior court.

losses "resulting from actual or potential liability to a third party."[20]  Atlantic contends that even if its insurance policy did cover Swalling's first-party claims, it does not cover third-party claims against Swalling, such as the Pool lawsuit.  Because first-party claims in Alaska "accrue[] when coverage is disclaimed and the insured is notified," Atlantic argues that Swalling's claim accrued in August 2015, when it declined to defend Swalling, and was time-barred before November 2019, when Swalling eventually filed suit.

We agree that the court's decision was erroneous, but not for the reasons Atlantic states.  The superior court did not mention nor rely on any distinction between first- and third-party claims — instead the court focused on the fact that Atlantic issued Swalling an indemnity policy.  The superior court cited *Flint Hills Resources Alaska, LLC v. Williams Alaska Petroleum, Inc.*[21] for the proposition that "[t]he statute of limitations on a pure indemnity claim does not begin to run until after an indemnifiable loss has occurred."  It found that Swalling had not suffered an "indemnifiable loss," and its claim against Atlantic had not accrued, until final judgment was entered in the Pool lawsuit in 2019.

But in *Flint Hills* we held that a claim for pure contractual indemnity accrues "when the indemnifying party refuses the indemnified party's request for indemnification," not when a party suffers an indemnifiable loss.[22]  Here, Atlantic first declined coverage in August 2015 and again in June 2016 in response to a demand letter sent by Swalling's attorney.  Atlantic made clear that it did not believe the damage to the barge was covered or that it owed any duty to defend Swalling in federal court.

---

[20]     14 JOHN R. PLITT ET AL., COUCH ON INSURANCE § 198:3 (3d ed. 2023). Property insurance and health insurance are two types of first-party insurance, and a claim under these policies would be a "first-party claim."  *See id.*  An example of a third-party claim would be one brought under a liability insurance policy.  *See id.*

[21]     377 P.3d 959 (Alaska 2016).

[22]     *Id.* at 970.

Under *Flint Hills*, the statute of limitations on Swalling's claims against Atlantic began to run no later than June 2016 when Atlantic declined to defend Swalling, and Swalling's November 2019 complaint was therefore untimely. Atlantic was entitled to summary judgment on that basis.[23]

## V. CONCLUSION

We AFFIRM the superior court's grant of summary judgment to Alaska USA and Atlantic.

---

[23] We observe that even if the statute of limitations began to run when Swalling suffered an "indemnifiable loss," its claims against Atlantic would still be time-barred because it suffered such a loss in January 2016 — when it retained counsel and began incurring defense costs in the Pool litigation.